## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

| | | |
|---|---|---|
| CAVA MEZZE GRILL, LLC | ) | |
| 702 H Street, N.W. | ) | |
| Washington, DC 20001, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Case No. _____ |
| | ) | |
| MEZEH, INC. | ) | **JURY REQUESTED** |
| 7804 Devereux Manor Court | ) | |
| Fairfax Station, VA 22039, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| MEZEH-SHORT PUMP, LLC | ) | |
| 11716 W. Broad Street | ) | |
| Short Pump, VA 23233, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

Plaintiff Cava Mezze Grill, LLC ("Plaintiff"), by undersigned counsel, brings this action

against Defendants Mezeh, Inc., and Mezeh-Short Pump, LLC (collectively, "Defendants") for

false advertising in violation of Section 43(a) of the federal Lanham Act, for tortious interference

with prospective economic advantage, and for violating the Virginia Deceptive Advertising

Statute, Va. Code § 18.2-216.  In support of this action, Plaintiff alleges as follows:

### NATURE OF THE ACTION

1.     Plaintiff and Defendants are close competitors—each owning and operating

restaurants that serve Mediterranean-style food in an assembly-line format in Virginia and

elsewhere.  Not content to compete on quality, service, and value, Defendants have commenced

a false and misleading advertising campaign against Plaintiff's CAVA restaurants on the Yelp

website, one of the most important sources of information for consumers today.   Posing as neutral, unaffiliated customers, Defendants' employees and agents posted negative reviews of Plaintiff's CAVA restaurants, describing a litany of supposedly bad experiences, giving low ratings, and recommending Yelp users instead go to Defendants' Mezeh restaurants.   Also, posing as neutral, unaffiliated customers, Defendants' employees and agents posted positive reviews of Mezeh.   And they "voted" on Yelp for negative CAVA reviews and positive Mezeh reviews.   Nowhere do Defendants' false and misleading online reviews and votes, which constitute commercial advertisements, disclose that they were posted by Mezeh employees acting within the scope of their employment for Mezeh.

2.      Defendants' false and misleading Yelp reviews are inherently and materially deceptive—they purport to be impartial information about restaurant experiences from consumers for the benefit of other consumers when, in fact, they are promotional propaganda from an undisclosed competitor for the commercial benefit of that competitor.   They are also substantially injurious to Plaintiff, as they steer customers away from CAVA restaurants; the reviews factor into CAVA's overall Yelp ratings, which have a substantial effect on restaurant sales; and they determine the prominence CAVA receives in Yelp search results.   Thus, Defendants' false and deceptive advertising campaign has deceived consumers, diverted customers and sales away from Plaintiff, and caused substantial losses to the business, reputation, and goodwill of Plaintiff's CAVA restaurants.

3.      Because online consumer reviews are meant to be—and purport to be—reviews from customers, truth-in-advertising requires that businesses leave them to customers.   And when a business seeks to advertise and promote its own services, or distribute comparative information about competitors, truth-in-advertising requires that the connection between the business and its advertising material be disclosed.   Defendants' campaign of surreptitiously

posting consumer reviews on Yelp for competitive purposes—to diminish Plaintiff's business, reputation, and goodwill and to promote their own Mezeh restaurants—is inherently deceptive, misleading, and unethical.  The federal Lanham Act, the common law of tortious interference with prospective economic advantage, and the Virginia Deceptive Advertising Statute, Va. Code § 18.2-216, make this conduct unlawful, requiring that it be permanently enjoined and rendering Defendants liable for damages and other remedies sought below.

## THE PARTIES

4.     Plaintiff owns and operates a number of CAVA restaurants in Virginia, Maryland, and several other states.  Plaintiff is a Maryland limited liability corporation with its principal place of business in the District of Columbia.  Its single member is Cava Group, Inc., a Delaware corporation with its principal place of business in the District of Columbia.

5.     Defendant Mezeh, Inc., directly or through affiliates, owns and operates a number of Mezeh Mediterranean Grill restaurants in Virginia and Maryland.  Mezeh, Inc. is a Virginia corporation with its principal place of business at 7804 Devereux Manor Court, Fairfax Station, Fairfax County, Virginia.

6.     Defendant Mezeh-Short Pump, LLC is an affiliate of Mezeh, Inc., that owns and operates the Mezeh restaurant in Short Pump Town Center in Henrico County, Virginia.  Mezeh-Short Pump, LLC is a Virginia limited liability company with its principal place of business at 11716 W. Broad Street, Richmond, Virginia.

## JURISDICTION AND VENUE

7.     The Court has subject-matter jurisdiction under 15 U.S.C. § 1121 and 28 U.S.C §§ 1331, 1332, 1338 and 1367.

8.     Plaintiff and Defendants have diverse citizenship.  Plaintiff is a Maryland limited liability corporation with its member's principal place of business in Washington, D.C.

Defendant Mezeh, Inc. is incorporated in Virginia with its principal place of business in Virginia, and Defendant Mezeh-Short Pump, LLC is a Virginia limited liability corporation with its principal place of business in Virginia.  The members of Defendant Mezeh-Short Pump, LLC do not reside in Washington, D.C.

9.      The amount in controversy exceeds $75,000.

10.     The Court has personal jurisdiction over Defendants as all Defendants reside in the Commonwealth of Virginia.

11.     Venue is proper in this District and Division under 28 U.S.C. § 1391(b) and the Court's Local Rules, because Defendant Mezeh, Inc. resides in this District and Division and all Defendants are residents of the Commonwealth of Virginia, and because a substantial part of the events or omissions giving rise to the claims occurred in this District and Division.

## FACTUAL ALLEGATIONS

**A.      Mezeh and CAVA Compete in Virginia and Maryland**

12.     Plaintiff opened its first Cava Mezze Grill restaurant in Bethesda, Maryland, in 2011.  Plaintiff has since opened more than thirty other Cava Mezze Grill restaurants—also known as CAVA—in Virginia, Maryland, the District of Columbia, California, New York, and New Jersey.  Each of these restaurants serves Mediterranean-style cuisine in an assembly-line format.

13.     Plaintiff directly or through wholly owned subsidiaries owns and operates each of the CAVA restaurants.  None of those restaurants is a franchise.

14.     Plaintiff owns and operates fifteen CAVA restaurants in the Commonwealth of Virginia, including ten in Fairfax County.

15.     Plaintiff owns and operates five CAVA restaurants in the State of Maryland.

16.     All of the CAVA restaurants use an assembly-line concept, in which customers select various ingredients to customize their order while it is being prepared.  A customer first chooses a base—a pita, salad bowl, rice bowl, or mini pitas—and then chooses from a variety of spices, proteins, sauces, and other toppings.

17.     Mezeh opened the first Mezeh Mediterranean Grill in Annapolis, Maryland in 2013.  Mezeh has since opened eleven more Mezeh Mediterranean Grill restaurants—also known as Mezeh or Mezeh Grill—in Virginia and Maryland.  Like CAVA, Mezeh restaurants serve Mediterranean-style cuisine.

18.     All of the Mezeh restaurants use the same type of assembly-line concept as CAVA, in which customers customize their selections while their order is being prepared.  As at CAVA, a customer at Mezeh first chooses a base—a pita, salad bowl, rice bowl, or wrap—and then selects from a variety of spices, proteins, sauces, and other toppings.  The types of spices, proteins, sauces, and other toppings offered by Mezeh are similar to those offered by CAVA.

19.     CAVA and Mezeh are direct competitors.  They each serve a comparable type of Mediterranean-inspired cuisine; there is significant overlap between their menus; they both serve food in assembly-line format; and they have restaurants in the same regions, including Virginia and Maryland.  A number of the CAVA and Mezeh restaurants operate in the same towns, including the restaurants in Fairfax and Richmond, Virginia, as well as Gaithersburg, Maryland. Some, such as the restaurants in the Short Pump area of Richmond, are separated by less than a mile.

20.     As Mezeh has expanded, it has opened new restaurants in close proximity to existing CAVA restaurants, putting the two restaurants in even closer competition.

B.      **CAVA and Mezeh Appear on Yelp**

21.     Yelp.com ("Yelp") is a website on which users submit reviews of businesses' products and services.

22.     Yelp creates a profile page for a business, to which Yelp users are directed when the business appears in their search results.  Businesses can "claim" their Yelp profiles, which allows them to add additional information.  For businesses such as a restaurant with multiple locations, Yelp creates a separate profile page for each location.

23.     A Yelp user review includes both a rating, from one to five stars, and an open-ended review, where a user can write a description of their experience with the business.  Each user's rating and descriptive review appears on the reviewed business's profile page.  All of the users' star ratings are aggregated and appear at the top of the business's page.  Additionally, excerpts from the descriptive portion of certain reviews appear at the top of the business's profile page.

24.     Users may react to their and other users' reviews on Yelp by "voting" for reviews as "Useful," "Funny," or "Cool."  Those designations factor into the prominence that any particular review receives on a given business's profile page.

25.     Individuals, including businesses, may also "share" reviews on Facebook, Twitter, or over email by following a link on the business's profile page.

26.     Yelp is regarded as one of the most important marketing websites on the internet. According to Yelp's website, in the second quarter of 2017, Yelp was visited by an average of 28 million unique users via its mobile app, 74 million unique users via its mobile website, and 83 million unique users via its desktop website—or 185 million total—each month.

27.     User reviews of a company listed on Yelp—both star ratings and descriptions— have a significant impact on that company's business.  Numerous studies have shown that an

increase in the number of stars in a business's Yelp rating—or even an increase of less than one star (such as from 3.5 to 4.0)—results in a substantial increase in business.  Similarly, even a slight decrease in a star rating can have a substantially negative impact on revenue.

28.     One Harvard Business School study found that a one-star increase in a business's Yelp rating leads to a revenue increase of between 5.4% and 9%.  M. Luca, *Reviews, Reputation, and Revenue: The Case of Yelp.com*, Working Paper 12-016 (2011).  Other studies have found that Yelp ratings and reviews have similarly large economic effects on businesses.

29.     The number and quality of reviews is used to determine where a company appears in a user's search results.  The more (and the more positive) reviews a company has, the higher it will appear in users' search results.

30.     Yelp users take reviews seriously.  "Often times, the online rating of a business is taken as a proxy for its objective 'quality rating.'  The underlying assumption is that by averaging ratings across users of varying tastes and preferences, dependencies upon said factors are eliminated."  O. Fadil & J. Soloff, *Information Cascades and Online Rating Games*, Cornell University Library, https://arxiv.org/abs/1508.00893 (Aug. 2015).  In other words, users see Yelp ratings as a reliable and accurate measure of a restaurant's quality.

31.     Yelp has Terms of Service ("TOS") to which users must agree before posting a review.  Under the TOS, users may not write fake or defamatory reviews; they may not be compensated for writing a review; and they may not use the site to promote a business except as expressly permitted by Yelp.  The TOS also require users to adhere to Yelp's Content Guidelines, which state that users "*shouldn't write reviews of [their] own business or employer*" and shouldn't write reviews of "*competitors in [their] industry*."  (Emphasis added).

32.     Yelp's Content Guidelines emphasize "personal experience."  The website admonishes users to post "about your firsthand consumer experience."

33.     Both CAVA and Mezeh are listed on Yelp, and each of their restaurants has a unique Yelp profile page on which users can post reviews and ratings of, and vote on reviews for, that particular location.

34.     CAVA restaurants have appeared on Yelp since they first opened.  In that time, CAVA has garnered thousands of reviews.  The restaurant in Fairfax, Virginia, for instance, has over 350 reviews.  The CAVA located in McLean, Virginia, has over 340 reviews.  And the CAVA in Chinatown, Washington, D.C., has 250 reviews.

35.     The newer restaurants have fewer reviews.  For instance, the CAVA at Reagan National Airport has only 84 Yelp reviews.  And the CAVA in Alexandria, Virginia, has only 24 reviews.  For restaurants with few reviews, each review carries more weight.  A two-star review at a location with few reviews will have a far greater negative impact than that same review at an established location with many more reviews.

## C.     Defendants' Campaign of Untrue, Deceptive, and Misleading Advertising

36.     Defendants realized the power of Yelp to promote their own Mezeh restaurants. In locations where Mezeh competes with CAVA, Defendants purchased search preferences on Yelp.  For instance, when a consumer searches for "Cava" on Yelp in Short Pump, Virginia, the first result is not CAVA at all—it is *Mezeh*.  That is because Defendants pay Yelp so that, no matter whether it or CAVA has better reviews, or whether someone is searching for Cava, Mezeh comes first.  That sort of advertising comes with a disclosure.  When Mezeh appears ahead of CAVA, a notation signals that Mezeh has paid for the advertisement.

37.     But Defendants did not stop at legitimate competition and advertising. Recognizing Yelp's power to steer consumers to (or away from) restaurants, in or around May 2017, Defendants' advertising on Yelp took a devious turn.  Defendants began posting untrue, deceptive, and misleading negative reviews on CAVA's Yelp page, and positive reviews of

Mezeh on Mezeh's pages, in an effort to divert CAVA's customers and business to their own restaurants.

38. Defendants' advertising campaign has consisted of false, deceptive, and misleading negative reviews of CAVA restaurants on those restaurants' Yelp pages. Those online "consumer" reviews—posted by Defendants' employees and agents—have included a litany of disparaging remarks about CAVA. They have included low ratings that factor into CAVA's overall Yelp ratings. The reviews have made false and misleading comparisons deceptively suggesting that Mezeh is superior to CAVA. And they have included recommendations—on *CAVA*'s Yelp pages—that consumers patronize Mezeh instead.

39. Defendants—through their employees and agents—have also posted positive reviews about their Mezeh restaurants on those restaurants' Yelp pages. Those online "consumer" reviews have included glowing and laudatory remarks about the reviewers' experiences at Mezeh. They have included high ratings for Mezeh, which get factored into Mezeh's overall Yelp ratings. And they have included comments highly critical of CAVA—on Mezeh's own Yelp pages.

40. Defendants—through their employees and agents—have also "voted" on Yelp for negative CAVA reviews and positive Mezeh reviews as a way to strategically manipulate the placement and prominence that these reviews receive on the Yelp website.

41. Each of Defendants' online posts—including the Yelp reviews, ratings, and votes—was made by Defendants' employees and agents posing as neutral, unaffiliated consumers. Defendants' posts have falsely and deceptively represented and necessarily implied that they are being posted by consumers for the benefit of consumers and not by a competitor acting for its own commercial benefit.

42.     Each of Defendants' online posts concealed the fact that the person making them was employed by or affiliated with Mezeh, a direct competitor of Cava; that they made them while acting for Mezeh's own commercial benefit; and that—by placing online reviews of their own business and of their competitor—they had violated Yelp's TOS.

43.     Each of Defendants' online posts—including the Yelp reviews, ratings, and votes—was made by Defendants' employees and agents acting within the scope of their employment, for the benefit of Defendants, while under Defendants' authority and control.

44.     Courtney Henning created a series of such posts.  Henning is Mezeh's Marketing and Catering Manager.   Upon information and belief, she works primarily at Mezeh's Short Pump, Virginia, restaurant, and is employed by Mezeh-Short Pump LLC.   At all relevant times, including when she wrote her online posts, Henning acted under Mezeh's authority and control, within the scope of her employment by Mezeh, and for Mezeh's commercial benefit.

45.     On May 15, 2017, Henning—operating as Yelp user "Courtney H."—posted a negative review of the CAVA restaurant located at 810 West Grace Street in Richmond, Virginia, in "the Fan" neighborhood of Richmond.   Her review falsely stated "these guys are a franchise, so meh."  It also disparagingly stated that the CAVA restaurant "had terrible customer service," that its cashier overcharged her, that its food was "Mediocre in flavor," that its "chicken was dry and un-flavorful," that there was "not much variety to select from," that it had an "Awkward ordering system," and that it had "pre-packaged goods in the fridge."   Henning's review gave CAVA's Fan restaurant two out of five stars.   Henning's review also told users to "go[] to Mezeh Mediterranean Grill" instead because "they are incredible in comparison with food options and flavor."

46.     Henning posted a review of CAVA's Short Pump restaurant, again as Yelp user "Courtney H.," on August 22, 2017.   This review remarked that there were "not many [toppings]

10

to select from" and that "[t]he chicken was disappointing and dry."   Again, the review recommended Mezeh: "gotta step your game up if competing with a local chain like mezeh." Henning this time gave CAVA three stars.[1]

47.   Henning's May 15, 2017 and August 22, 2017 reviews of CAVA's restaurants violated Yelp's TOS.  Henning posted those reviews while she was employed by Mezeh, within the scope of her employment by Mezeh, and while acting under Mezeh's authority and control.

48.   Nowhere in her May 15, 2017 and August 22, 2017 reviews of CAVA's restaurants did Henning disclose that she was employed by Mezeh; that she was posting the review within the scope of her employment by Mezeh; or that she was posting the review for Mezeh's commercial benefit.

49.   The overall takeaway of Henning's May 15, 2017 and August 22, 2017 reviews of CAVA's restaurants—that they were unbiased reviews from an independent customer made for the benefit of other consumers, and not part of an undisclosed advertising campaign to promote Mezeh and undermine CAVA—was false, misleading, and deceptive.

50.   Upon learning that these reviews had been posted by Mezeh's marketing manager, Plaintiff asked Yelp to remove them as violations of Yelp's TOS.  Yelp did so. Nevertheless, and despite knowing that the review violated Yelp's TOS, on September 11, 2017, Henning re-posted on Yelp an exact copy of her May 15 review of CAVA's Fan restaurant, this time bearing a September 11, 2017 date and thereby falsely representing that the review related to a recent experience at the restaurant (which it did not).

51.   On the same date that Henning re-posted her September 11, 2017, review of CAVA's Fan restaurant, she posted on Yelp a five-star review of Mezeh's Short Pump restaurant

---

[1] A three-star Yelp rating is damaging.  According to consumer surveys, 35.3% of consumers would not eat at a restaurant with a Yelp rating below four stars. https://www.entrepreneur.com/article/250838#.

where she works.  This review stated: "Basically if you're looking to tantalize your taste buds with the finest full flavored Mediterranean food you can find in Richmond, this is it!!"  Henning did not disclose in this review that she was employed by, or affiliated with, Mezeh; that she was posting the review within the scope of her employment for Mezeh; or that she was posting it for Mezeh's benefit.

52.     In Henning's reviews, she misrepresented herself as an ordinary customer rather than Mezeh's marketing manager.  In her May 15 review, she stated she "went to buy" products at CAVA; and in her August 22 review, she said she planned to "come back and give [CAVA] another chance."  Indeed, in her September 11 review of the Short Pump restaurant where she works, another Mezeh employee—who must have interacted with Henning—responds: "Courtney-- Thank you so much for your review!  Looking forward to your next visit!" as if she were an unaffiliated, neutral customer rather than a Mezeh employee.

53.     Henning also engaged in a pattern of up-voting negative reviews of CAVA's Short Pump location.  She voted for one-, two-, and three- star reviews of CAVA's restaurant as "useful," thus causing those reviews to receive greater weight and prominence.  Her voting was not neutral, and was instead part of Mezeh's campaign to harm CAVA by posting and promoting negative reviews.  Henning's voting was in violation of Yelp's TOS, and it implied that she was a neutral consumer, when in fact she was acting in her capacity as an employee of Mezeh and under Mezeh's direction and control.

54.     Upon information and belief, numerous other untrue, deceptive, and misleading reviews have been posted on Yelp and other online consumer review sites by Defendants' employees and agents acting within the scope of their employment, for the benefit of Defendants, and while under Defendants' authority and control.  While not all of these employees and agents of Defendants are as readily identifiable as Henning, the quantity and quality of these reviews

provide Plaintiff with ample reason to believe that Mezeh has requested, directed and otherwise encouraged its employees and agents, acting within the scope of their employment, to post numerous false and deceptive reviews about CAVA and Mezeh—all of which information is in Mezeh's sole control and likely will have further evidentiary support after a reasonable opportunity for discovery.

55.     For example, reviews have appeared nearly simultaneously, *from the same users,* on CAVA'S Yelp pages and Mezeh's Yelp pages, giving CAVA highly negative ratings while giving Mezeh very positive ratings.  These and other suspicious reviews on CAVA's Yelp pages recommend Mezeh, often without even a description of the CAVA restaurant the reviewer purportedly visited.  Other anonymous Yelp users, like Henning, have posted multiple disparaging reviews of CAVA covering numerous locations in a short period of time, again while making a point to recommend Mezeh in what are purportedly CAVA reviews.

**D.     Defendants' Conduct Is Unethical**

56.     Defendants' failure to disclose that the online reviews and votes they posted on Yelp and other online consumer websites were in fact produced by their own employees acting within the scope of their employment and while conducting promotional activity for Defendants is unethical, in addition to being unlawful (*see* Counts I, II, and III below).  Advertising standards and guidelines uniformly prohibit advertisers from publishing reviews or comparisons of the goods and services of their competitors without disclosing their interest as a competitor and their role in the publication.

57.     The *Principles and Practices for Advertising Ethics* ("*Principles and Practices*") developed by the Institute for Advertising Ethics ("IAE"), whose mission is to serve as the primary resource for advertising professionals on ethics-in-advertising, specifically proscribes Defendants' conduct.  Principle 4 of *Principles and Practices* provides that "Advertisers should

disclose all material conditions, such as payment or receipt of a free product, affecting endorsements in social and traditional channels, *as well as the identity of endorsers, all in the interest of full disclosure and transparency*."  (Emphasis added).  The Commentary supporting adoption of Principle 4 states that its underlying concern is "whether people are endorsing on their own, or if they are being compensated by a brand/company or are even part of the brand/company organization."

58.     Similarly, the Word of Mouth Marketing Association ("WOMMA"), a trade organization for social media advertisers, has adopted a Code of Ethics and Standards of Conduct that requires marketers to "make meaningful disclosures of their relationships" with advertisers when making representations to consumers.  Essentially, WOMMA has declared it unethical for advertisers to make material claims to consumers over social media without disclosing that the advertising is being made by someone connected to the products.

59.     Media vendors also require that promotional material be described as an advertisement and fairly and accurately disclose the advertiser behind it.

60.     Mezeh's conduct runs afoul of each of these ethical standards.

61.     The Federal Trade Commission ("FTC") has also issued guidelines concerning "the use of endorsements and testimonials in advertising."  16 C.F.R. § 255.  Those guidelines require—as a condition of truth-in-advertising—that "[w]hen there exists a connection between the endorser and the seller of the advertised product that might materially affect the weight or credibility of the endorsement (i.e., the connection is not reasonably expected by the audience), *such connection must be fully disclosed*."  *Id.* § 255.5 (emphasis added).

## COUNT I
## FALSE AND MISLEADING ADVERTISING
## LANHAM ACT § 43(a), 15 U.S.C. § 1125(a)

62.     Plaintiff repeats and re-alleges each and every allegation set forth in the preceding paragraphs as though fully set forth herein.

63.     Defendants have violated and continue to violate Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), by posting false and misleading reviews of CAVA restaurants on consumer review websites, by posting false and misleading reviews of Mezeh restaurants on consumer review websites, and by placing votes for negative CAVA reviews and positive Mezeh reviews on consumer review websites—all while posing as neutral, unaffiliated customers and without disclosing their connection to Mezeh or their competitive, promotional and advertising purposes.

64.     Defendants are in commercial competition with Plaintiff.

65.     Defendants' online reviews and votes are commercial advertisements and promotion about Plaintiff's and Defendants' goods, services, and commercial activities, are commercial speech made for the purpose of influencing consumers to buy Defendants' goods and services, were made for promotional purposes, and have been disseminated sufficiently to the relevant purchasing public.

66.     In their online reviews and votes, Defendants have made numerous false and misleading descriptions and representations of fact, expressly and implicitly, including without limitation that the reviews, ratings and votes concerning CAVA restaurants were made by neutral customers not affiliated with a competitor; that the reviews, ratings, and votes concerning Mezeh restaurants were made by neutral customers not affiliated with Mezeh; that the review, ratings and votes made were true consumer sentiments not made for a competitive, promotional or advertising purpose; that any competitive or employment connection between the reviewer and

business being reviewed was disclosed; that any CAVA restaurant is a franchise; that the restaurants were actually visited, and on certain dates; that the reviews complied with Yelp's TOS; and that Mezeh restaurants are superior to CAVA restaurants.

67.    In their online reviews and votes, Defendants have made numerous false and misleading descriptions and representations of fact, expressly and implicitly, by communicating the overall take-away that the reviews, ratings and votes were made by neutral, unaffiliated customers for the benefit of consumers and not by the business being reviewed, or a competitor of the business being reviewed, for its own commercial benefit.

68.    In their online reviews and votes, Defendants have made numerous false and misleading descriptions and representations of fact, expressly and implicitly, by concealing their status as competitors and owners of the restaurants being reviewed and their employment relationship with the competitors and owners; by concealing that the reviews, ratings, and votes were made for competitive, promotional, and advertising purposes; and by concealing that these reviews, ratings, and votes were made in violation of Yelp's TOS.

69.    Through their online consumer reviews and votes on Yelp's website, Defendants have used in commerce words, terms, names, symbols, and devices which have misrepresented the nature, characteristics, and qualities of Plaintiff's and Defendants' goods, services, and commercial activities.

70.    Each of the misrepresentations and omissions made by Defendants referred to in paragraphs 65-69 was material and was likely to influence and did influence consumer purchasing decisions regarding Plaintiff's and Defendants' restaurants.

71.    Each of the misrepresentations and omissions made by Defendants referred to in paragraphs 65-69 has a tendency to deceive and has deceived a substantial segment of its

audience as well as a substantial segment of the purchasing public who could or have patronized Plaintiff's and Defendants' restaurants.

72.     Each of the misrepresentations and omissions made by Defendants referred to in paragraphs 65-69 has a tendency to mislead and confuse consumers, and has misled and confused consumers, about the nature, characteristics, and qualities of Plaintiff's and Defendants' goods, services, and commercial activities.

73.     Each of the misrepresentations and omissions referred to in paragraphs 65-69 was made by Defendants knowingly, willfully, and deliberately with the intent to mislead and confuse consumers.

74.     Each of the misrepresentations and omissions referred to in paragraphs 65-69 was made by Defendants knowingly, willfully, and deliberately with the intent to increase the sale and consumption of their goods and services.

75.     Each of the misrepresentations and omissions referred to in paragraphs 65-69 was made by Defendants knowingly, willfully, and deliberately with the intent to harm and decrease the sales and consumption of Plaintiff's goods and services.

76.     By posting the misrepresentations and omissions referred to in paragraphs 63-67 on the internet and on Yelp's website, by making them broadly accessible to millions of consumers across the country, and by making them about restaurants located in Virginia, Maryland, and other states, Defendants have placed these misrepresentations in interstate commerce.

77.     Plaintiff has been injured, and is likely to be further injured, as a direct and proximate result of the misrepresentations and omissions made by Defendants discussed in the paragraphs above, including by reason of the direct diversion of Plaintiff's sales, by a lessening

of the goodwill associated with Plaintiffs' restaurants, by loss of business and profits, and by damage to Plaintiff's overall reputation.

78. By reason of Defendants' conduct, Plaintiff is entitled to recover full damages from Defendants including without limitation Plaintiff's lost profits and all other economic harm that it has suffered, the costs of the action, and Defendants' profits.

79. By reason of Defendants' conduct, Plaintiff is entitled to recover enhanced damages of three times the amount of actual damages.

80. By reason of Defendants' conduct, Plaintiff is entitled to reasonable attorneys' fees under 15 U.S.C. § 1117.

81. Defendants' conduct has caused, continues to cause, and will in the future cause irreparable harm to Plaintiff for which there is no adequate remedy at law, and for which Plaintiff is entitled to injunctive relief under 15 U.S.C. § 1116.

**COUNT II**
**TORTIOUS INTERFERENCE WITH**
**PROSPECTIVE ECONOMIC ADVANTAGE**

82. Plaintiff repeats and re-alleges each and every allegation set forth in the preceding paragraphs as though fully set forth herein.

83. Plaintiff and each of its restaurants have an established customer base and expect those customers and others to patronize the restaurant such that Plaintiff has a probability of future economic benefit from those customers' expected future business.

84. Defendants, as close competitors of Plaintiff with competitive operations in many of the same regions as Plaintiff's restaurants, at all relevant times have known that Plaintiff has a business relationship with existing and future customers and an expectancy of future business with, and resulting economic benefit from, those customers.

85.     By deceptively posting false and misleading negative reviews of Plaintiff's restaurants online and by failing to disclose that those reviews were written and posted by Plaintiff's direct competitor, Defendant acted in a deceptive, unfair, unethical, tortious, and illegal manner and improperly interfered with Plaintiff's expectancy of its future economic benefits and its prospective business advantage.

86.     Defendants intended improperly to interfere with Plaintiff's expectancy of future economic benefits and its prospective economic advantage.

87.     Absent Defendants' intentional misconduct alleged in the paragraphs above, it was reasonably certain that Plaintiff would have fully continued its existing and future customer relationships and fully realized its expectancy of future economic benefit from those customers.

88.     Due to Defendants' improper and intentional misconduct, numerous customers have not patronized Plaintiff's restaurants and others have not continued their relationship with Plaintiff, causing Plaintiff to lose future economic benefits.    Defendants' improper and intentional misconduct has thus caused and proximately caused Plaintiff to suffer damages.

**COUNT III**
**VIOLATION OF VIRGINIA'S DECEPTIVE ADVERTISING STATUTE**
**VA. CODE § 18.2-216 & VA. CODE § 59.1-68.3**

89.     Plaintiff repeats and re-alleges each and every allegation set forth in the preceding paragraphs as though fully set forth herein.

90.     Defendants have violated and continue to violate Section 18.2-216 of the Virginia Code ("Untrue, deceptive or misleading advertising, inducements, writings or documents") by posting false and misleading reviews of CAVA restaurants on consumer review websites, by posting false and misleading reviews of Mezeh restaurants on consumer review websites, and by placing votes for negative CAVA reviews and positive Mezeh reviews on consumer review

websites—all while posing as neutral, unaffiliated customers and without disclosing their connection to Mezeh or their competitive, promotional and advertising purposes.

91.     Defendants posted their online reviews and votes with the intent to sell to the public the goods and services offered at Mezeh restaurants and to increase the consumption thereof, and those online reviews and votes constitute advertisements—made with the purpose of increasing sales of, and regarding, the food and services offered at Mezeh restaurants.

92.     Defendants made, published, disseminated, circulated, and placed before the public on the internet and the Yelp website their online reviews and votes, and caused, directly and indirectly, such online reviews and votes to be made, published, disseminated, circulated, and placed before the public on the internet and the Yelp website.

93.     Defendants made, published, disseminated, circulated, and placed their online reviews and votes in Virginia.

94.     Defendants' online reviews and votes contain materially untrue, deceptive and misleading assertions, representations, statements of fact, and omissions, including without limitation that the reviews, ratings and votes concerning CAVA restaurants were made by neutral customers not affiliated with a competitor; that the reviews, ratings, and votes concerning Mezeh restaurants were made by neutral customers not affiliated with Mezeh; that the review, ratings and votes made were true consumer sentiments not made for a competitive, promotional or advertising purpose; that any competitive or employment connection between the reviewer and business being reviewed was disclosed; that any CAVA restaurant is a franchise; that the restaurants were actually visited, and on certain dates; that the reviews complied with Yelp's TOS; and that Mezeh restaurants are superior to CAVA restaurants.

95.     Defendants' online reviews and votes contain materially untrue, deceptive and misleading assertions, representations, statements of fact, and omissions, including the necessary

implication and overall takeaway that those reviews, ratings and votes were neutral and made by unbiased consumers for the benefit of consumers and not for the commercial benefit of the business being reviewed or its competitors.

96.     Defendants' online reviews and votes contain materially untrue, deceptive and misleading assertions, representations, statements of fact, and omissions, including concealment of their status as competitors and owners of the restaurants being reviewed and their employment relationship with the competitors and owners; concealment that the reviews, ratings, and votes were made for competitive, promotional, and advertising purposes; and concealment of the fact that these reviews, ratings, and votes were made in violation of Yelp's TOS.

97.     Defendants' online reviews and votes constitute a fraudulent, deceptive, and misleading method, device, and practice to induce the public to patronize Mezeh restaurants.

98.     Plaintiff has suffered loss as a direct and proximate result of Defendants' misconduct discussed above, including by reason of the direct diversion of Plaintiff's sales, by a lessening of the goodwill associated with Plaintiff's restaurants, by loss of business and profits, and by damage to Plaintiff's overall reputation.

99.     By reason of Defendants' conduct, Plaintiff is entitled to recover full damages from Defendants.

100.     Plaintiff has no adequate remedy at law and is suffering irreparable harm which will continue unless enjoined.

101.     By reason of Defendants' conduct, Plaintiff is entitled to recover reasonable attorneys' fees under Va. Code § 59.1-68.3.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that this Court:

A.     Enter a permanent injunction restraining and enjoining Defendants, their affiliates, officers, directors, employees, agents, successors and assigns, and any and all persons in active concert or participation with any of them, from continuing to engage in their false, deceptive, and misleading advertising campaign against Plaintiff or otherwise making false, deceptive, or misleading claims or statements about Plaintiff or its products or services.

B.     Order Defendants to account for and submit to Plaintiff all profits derived from the sales Defendants obtained through their false, deceptive, and misleading advertising.

C.     Order Defendants to delete and permanently remove all false, deceptive, or misleading advertisements they or anyone acting at their direction or request has created, and to request that Yelp remove such advertisements.

D.     Order Defendants to issue a formal public retraction and engage in corrective advertising to rectify their false, deceptive, and misleading statements about Plaintiff and its products and services.

E.     Award Plaintiff damages against Defendants in an amount to be determined at trial.

F.     Award Plaintiff enhanced damages under the federal Lanham Act.

G.     Award Plaintiff punitive damages against Defendants in an amount to be determined at trial given the willful nature of their actions.

H.     Award Plaintiff pre-judgment and post-judgment interest on any damages award.

I.     Award Plaintiff its reasonable attorney's fees, costs, and expenses in bringing this action.

J.     Grant such further relief as the Court may deem just and appropriate.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury on all claims in this Complaint so triable.


Dated:  October 12, 2017                    Respectfully submitted,

                                            */s/ Donald Burke*
                                            Donald Burke  VA Bar No. 76550
                                            Deneen K. Melander VA Bar No. 27445
                                            Philip A. Sechler (*pro hac vice* motion forthcoming)
                                            Shai D. Bronshtein (*pro hac vice* motion forthcoming)

                                            ROBBINS, RUSSELL, ENGLERT, ORSECK,
                                              UNTEREINER & SAUBER LLP
                                            1801 K St. NW Suite 411-L
                                            Washington, DC, 20006
                                            (202) 775-4500
                                            dburke@robbinsrussell.com
                                            dmelander@robbinsrussell.com
                                            psechler@robbinsrussell.com
                                            sbronshtein@robbinsrussell.com

                                            *Attorneys for Plaintiff Cava Mezze Grill, LLC*